IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0280-WJM-MEH

ANNETTE J. ALTSCHWAGER,

   Plaintiff,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY,

   Defendant.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT MOTION TO STRIKE

---

Plaintiff Annette Altschwager ("Plaintiff"), appearing *pro se*, brings this lawsuit against Defendant Progressive Casualty Insurance Company ("Defendant"), alleging employment discrimination on the basis of sex, disability, and age, as well as retaliation for engaging in protected activities, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). (ECF No. 1.)  Before the Court are Defendant's Motion for Summary Judgment, filed November 26, 2018, and Defendant's Motion to Strike Plaintiff's Witnesses and Trial Exhibits ("Motion to Strike") filed February 8, 2019.  (ECF Nos. 41 & 52.)

Under D.C.COLO.LCivR 56.1(a) and Federal Rule of Civil Procedure 6(d), Plaintiff's response to the Motion for Summary Judgment was due on December 20,

2018.  To date, Plaintiff has not filed a response.  On January 3, 2019, Defendant filed a notice of non-opposition to the Motion for Summary Judgment asking the Court to deem the motion confessed by Plaintiff's failure to respond.  (ECF No. 50.)

This Court may not grant an unopposed motion for summary judgment unless the moving party has met its burden of production and demonstrates that it is legally entitled to judgment under Rule 56.  *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).  Accordingly, the Court will proceed to evaluate whether Defendant has met the Rule 56 standard for summary judgment in its favor.

As discussed below, the Court finds that Defendant has satisfied the summary judgment standard, and thus grants the Motion for Summary Judgment.  Accordingly, the Motion to Strike is denied as moot.[1]

## I. BACKGROUND

**A.    Undisputed Material Facts**[2]

Plaintiff worked as a Customer Service Representative for Defendant in Colorado Springs, Colorado from August 2006 until she was terminated in June 2017. Plaintiff is a white female, and was approximately 49 years old at the time she was hired.  In 2007, Plaintiff was promoted to a Claims Generalist Trainee position in Loveland, Colorado, and later to an "unrepresented bodily injury" ("URBI")

---

[1] Under D.C.COLO.LCivR 7.1(d) and Rule 6(d), Plaintiff's response to the Motion to Strike was due on March 4, 2019.  To date, she has failed to file any response, and the Motion to Strike would be confessed if not mooted by the Court's order granting summary judgment.

[2] All facts are drawn from Defendant's undisputed statement of material facts, and taken as true for purposes of this Motion for Summary Judgment.  (ECF No. 41 at 2–10.)  As such, all paragraph references ("¶ __") are to Defendant's statement of facts.

representative. Plaintiff received several annual pay raises. From her hiring until June 2011, Plaintiff reported to Tim Akin, Whitney Simons, and Jennifer Loosvelt, among other supervisors. (¶ 4.) In June 2011, Plaintiff requested to return to a non-injury Claims Adjuster role, and Defendant granted her request. Plaintiff was permitted to keep her same compensation. (¶¶ 1–3, 6, 8.) She also transferred to the Fort Collins, Colorado office where she began reporting to a new supervisor, Stacy Helsel. (¶¶ 6–7.)

In March 2014, Plaintiff and Dena Morton (Human Resources Representative) discussed Plaintiff's request for an accommodation related to her hearing loss. Morton advised that Defendant needed requisite paperwork from Plaintiff's doctor. Morton eventually secured a modified headset for Plaintiff, and when she learned that an adapter was also required, she ordered the adapter. (¶¶ 9–11.)

From June 2014 to July 2015, Plaintiff was transferred to the Kansas City office, where supervisors began to note issues with Plaintiff's performance. Plaintiff applied for several new positions with Defendant in August 2014, May 2015, and July 2015. She was not selected for these positions. In July 2015, Plaintiff transferred back to Defendant's office in Fort Collins. (¶¶ 12–20.)

Upon her return to Colorado, Helsel purchased a headset for Plaintiff. Plaintiff reported technical issues with the headset in November 2015 and, when Defendant was unable to correct the issues, Plaintiff received a new headset in January 2016. In April 2016, Plaintiff moved to a different cubicle where she thought there would be less background noise. At that time, Helsel also set up a meeting with the technology department to discuss technical difficulties with the new headset. (¶¶ 23–28.) Defendant asserts that "[o]n a number of occasions, Plaintiff was either not using her

modified headset, forgetting to charge her modified headset, or dropping her headsets, all of which contributed to the issues she was having." (¶ 29.)

In March 2016, Plaintiff asked to work a modified schedule of 10 hours per day, four days per week, but her request was denied. In October 2016, Defendant granted a request that Plaintiff be permitted to work from home one day a week. Though she did not have a company-issued laptop, her supervisors arranged for Plaintiff to take the spare office laptop on the days Plaintiff worked from home. (¶¶ 30–32.)

On April 7, 2016, Plaintiff formally complained of a hostile work environment in an e-mail to Helsel, Webster, and Morton, alleging that Song Bimpeh and Ashley Emrich—females under the age of 40 who worked as URBI representatives—were favored in the office and that Plaintiff had a disproportionately high workload. (¶¶ 36–39.) Morton conducted an investigation. (¶ 40.) She had Webster gathered metrics, and asked another employee to review and confirm Webster's data for accuracy because Plaintiff had complained about treatment by Webster. (¶ 42.) Based on those metrics, Morton found that Plaintiff averaged "3.23 features per day, making her the 18th busiest person out of 33 in the organization." (¶ 41.) Morton was unable to corroborate Plaintiff's allegations of discrimination or unfair treatment. (¶ 40.)

In April 2017, Helsel and David Webster (a Claims Manager) issued a performance improvement plan to Plaintiff, which noted that Plaintiff was not satisfactorily performing her job duties and could improve her efficiency, accuracy, and claim resolution. (¶ 33.) Helsel and Webster also noted that Plaintiff consistently failed to check and return customer calls and voicemails. (¶ 34.)

On May 23, 2017, Webster reviewed Plaintiff's performance over the

4

performance improvement period and found that Plaintiff was still struggling with her work despite weekly meetings with Helsel. (¶ 43.) On June 5, 2017, Defendant terminated Plaintiff. (¶ 44.) The decisionmakers recommending termination were Morton, Webster, and Helsel, all of whom were over age forty. (¶ 45.) Morton and Helsel are women. (*Id.*)

On March 3, 2017, Plaintiff filed an EEOC charge alleging age and sex discrimination, as well as retaliation for complaints of discrimination in 2014, 2015, and 2016. She stated that the earliest date of discrimination was November 9, 2016, and most recent date was February 6, 2017. She later filed an amended EEOC charge on September 5, 2017, adding a claim for disability discrimination and claiming that she requested an accommodation in April 2017 that was denied. She thus amended the latest date of discrimination to April 30, 2017. (¶¶ 47–50.)

## B.     Additional Facts Drawn from Plaintiff's Complaint

Though Plaintiff did not file a response to the Motion for Summary Judgment, the following allegations, drawn from Plaintiff's complaint, are provided for reference:

- In 2007, Val Cerofsky (a supervisor) told Plaintiff that she was surprised Plaintiff was hired "because Progressive only hires young people." (ECF No. 1 at 11.) Cerofsky was not involved in the decision to terminate Plaintiff. (*See* ¶ 45.)

- Plaintiff's supervisors from 2007 to 2011—namely, Akin, Simons, and Loosvelt—treated Plaintiff's hearing loss "as a joke" and would make fun of Plaintiff for her hearing loss. (ECF No. 1 at 16.) After Plaintiff transferred to the Fort Collins office in 2011, she no longer reported to

5

- Akin, Simons, or Loosvelt. (¶ 7.)

- In 2013, in a conversation with a coworker, Mark Nixon (Regional Claims Manager) referred to an employee who left Progressive as "such a pretty young woman." (ECF No. 1 at 11.)

- In 2014, 2015, and 2016, Plaintiff alleges that she "reported ageism harassment" when the review process "went from objective to subjective and the tone of reviews changed for me and other older workers." (*Id.* at 10.)

- In 2015, Plaintiff participated in a lawsuit against Defendant "regarding the salary status for position," and received a payout settlement at the end of 2015. (*Id.* at 12.)

- In August 2016, Webster stated to Plaintiff that Defendant "would be hiring one day in the Fort Collins['] office because of the young ambitious candidates from [Colorado State University]." (*Id.*)

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for

6

the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

### A. Untimeliness of Certain Discrimination and Retaliation Claims

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies with either the EEOC or the appropriate state employment practices agency.  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).  "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful [employment] practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice . . . ."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (explaining timing requirements established by 42 U.S.C. § 2000e-5(e)(1)).  Colorado has established an "entity with the authority to grant or seek relief" (namely, the Colorado Civil Rights Division), so employees in Colorado are subject to this 300-day time limit.  *See, e.g., Castaldo v. Denver Pub. Sch.*, 276 F. App'x 839, 841 (10th Cir. 2008).  "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the

burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

Plaintiff filed her EEOC charge on March 3, 2017, and an amended EEOC charge on September 5, 2017. (¶¶ 47, 49.) Construing claims in the light most favorable to Plaintiff as the non-moving party, the earliest date at which she may still assert claims for discrete, discriminatory acts is 300-days prior to the filing of her first EEOC charge, or May 7, 2016.

It is undisputed that the following discrete acts occurred prior to May 7, 2016:

- Cerokensky's comment about hiring only young people in 2007;
- Certain supervisors mocking Plaintiff for her hearing loss from 2007 to 2011;
- Nixon's comments about a "pretty young woman" employee in 2013;
- Defendant's decision not to hire Plaintiff into positions for which she applied in August 2014, May 2015, and July 2015;
- Defendant's alleged discrimination (though specific acts are not identified) for Plaintiff's participation in a 2015 settlement of a lawsuit against Defendant; and
- Defendant's alleged discrimination (though specific acts are not identified) in retaliation for "ageism harassment" in 2014 and 2015.

Because Plaintiff failed to begin the administrative process for claiming an unlawful employment practices for each of the above incidents within 300 days of the incident, Plaintiff has not and cannot exhaust her administrative remedies for discrimination or

8

retaliation claims premised thereon. Discrimination and retaliation claims arising out of these discrete acts are thus time-barred. *See Shikles*, 426 F.3d at 1317. The Court thus lacks subject matter jurisdiction over claims based on allegedly adverse employment actions that occurred prior to May 7, 2016.

**B.      Sex Discrimination**

Plaintiff asserts a disparate treatment sex discrimination claim. (ECF No. 1 at 3.) However, in her complaint, Plaintiff merely states that she was discriminated against on the basis of sex. (*Id.*) She does not allege any particulars about when this conduct occurred, what the conduct was, or who discriminated against her on the basis of sex.

"A plaintiff may also show pretext on a theory of disparate treatment by providing evidence that [s]he was treated differently from other similarly-situated, nonprotected employees." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). However, the two individuals who Plaintiff generally alleges were treated more favorably than her are both female. Plaintiff does not identify any male employee who was similarly situated but treated more favorably, and thus has failed to make even an initial showing of sex discrimination. Moreover, two of the three individuals involved in the decision to terminate Plaintiff were female. *See Hayes v. Best Brands Corp.*, 2011 WL 3847160 at *4 (D. Kan. Aug. 26, 2011) ("Proof that the decisionmaker is the same gender as the plaintiff considerably undermines the probability that sex was a negative factor in the employment decision." (alterations incorporated)).

Given the dearth of facts to support a sex discrimination claim—no showing that a similarly situated employee of another sex received more favorable treatment, and

the fact that the majority of the decisionmakers were the same gender as Plaintiff—no reasonable jury could find for Plaintiff on her sex discrimination claim. The Court therefore grants summary judgment on Plaintiff's sex discrimination claim in favor of Defendant.

**C.    Disability Discrimination**

Plaintiff claims that supervisors teased her about her hearing loss and that Defendant denied her a reasonable accommodation. (ECF No. 1 at 8, 16, 24.) As discussed above, the first claim is time-barred. And as discussed below, Plaintiff has failed to show that Defendant denied her request for a reasonable accommodation for her hearing loss.

Under the ADA, a disabled employee has a cause of action against an employer that fails to reasonably accommodate her. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001.) "However, an employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested." *Id.* Instead, the employer "has broad discretion in determining which alternative accommodation should be provided." *Id.*

Here, it is undisputed that Defendant provided Plaintiff with a headset and moved her to a quieter area in the office. (¶¶ 11, 23, 26–27.) It is also undisputed that the headset did not always function properly. (¶¶ 24, 27–28.) Defendant also presents unrebutted evidence that Plaintiff's supervisors assisted her in working through issues with the headset, and continued to work with Plaintiff to provide a working headset that would allow her to work despite her alleged hearing loss. (¶¶ 27–28.) While Plaintiff

10

contends that Defendant should have provided an additional accommodation of plexiglass walls around her cubical to further reduce background noise, (*see* ECF No. 1 at 24), Defendant is required only to provide a reasonable accommodation, not Plaintiff's preferred accommodation. On the facts presented, no reasonable jury could conclude that Defendant failed to accommodate Plaintiff's request for a reasonable accommodation for her hearing disability. The Court thus grants the Motion in Defendant's favor with respect to Plaintiff's failure to accommodate claim.

**D.     Age Discrimination and Retaliation Claims**

Defendant is also entitled to summary judgment on Plaintiff's remaining claims of age discrimination and retaliation for engaging in protect activities. As discussed above, several of Plaintiff's age discrimination and retaliation claims arise out of discrete acts prior to May 7, 2016 and are time-barred.

Moreover, Plaintiff has not presented admissible evidence of direct age discrimination or retaliation. "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). The only possible direct evidence of age discrimination is Webster's August 2016 statement that Defendant would one day hire "young ambitious candidates" from a local university. (ECF No. 1 at 12.) However, this comment is directed more at future hiring, rather than age discrimination against current employees. Moreover, this comment is entirely unconnected to the decision to *terminate* Plaintiff. At best, the comment is circumstantial, not direct, evidence of discrimination. *See Danville*, 292 F.3d at 1249. In this regard, it is also significant that

11

Plaintiff has failed to allege facts demonstrating any direct evidence of retaliation.

Because Plaintiff has not presented direct evidence of age discrimination or retaliation, Plaintiff may only prevail on her claims if she can to establish discrimination under the *McDonnell Douglas* burden-shifting test. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir. 2000) (age discrimination); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (retaliation). Under the *McDonnell Douglas* three-step analysis, a plaintiff must first set forth a *prima facie* case of discrimination or retaliation. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, non-discriminatory basis for its employment decision. *Id.* If the defendant does so, the inference of discrimination drops out and the burden shifts back to the plaintiff. *Id.* At that point, the plaintiff must offer evidence to "show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id*.

The Court notes there is no genuine dispute of material fact because, by entirely failing to respond to Defendant's summary judgment motion, Plaintiff fails to present any facts to contradict Defendant's statement of facts. The question is, therefore, whether Defendant is entitled to judgment as a matter of law on the facts presented.

For purposes of analysis, the Court assumes without deciding that Plaintiff can establish a *prima facie* case of age discrimination and retaliation. It is undisputed that Defendant terminated Plaintiff. Defendant has stated a legitimate, non-discriminatory, non-retaliatory reason for terminating Plaintiff: Plaintiff performed poorly at her job and

failed to improve over the performance improvement period. (¶¶ 43–44.) The burden thus shifts to Plaintiff to present any evidence that Defendant's proffered explanation for her termination was pretextual. On the record before the Court, there are no facts that establish that Defendant's reason for termination was other than the non-discriminatory and non-retaliatory explanation provided to Plaintiff and discussed in the Motion. (*Id.*) *See Garrett*, 305 F.3d at 1216. Thus, the Court finds that Defendant is entitled to judgment as a matter of law on all Plaintiff's remaining claims.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 41) is GRANTED in favor of Defendant;

2. Defendant's Motion to Strike Plaintiff's Witnesses and Trial Exhibits (ECF No. 52) is DENIED AS MOOT;

3. The Final Trial Preparation Conference schedule for August 16, 2019, and the bench trial scheduled to begin on September 3, 2019, are both VACATED;

4. The Clerk shall enter judgment in favor of Defendant and against Plaintiff and shall terminate this case; and

5. Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 18th day of June, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge